# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JOHN TROSSEN,

        Plaintiff,

v.                                                 Case No. 10-C-380

MICHAEL J. ASTRUE,
Commissioner of Social Security SSA,
                      Defendant.

# DECISION AND ORDER REVERSING THE DECISION OF THE COMMISSIONER AND REMANDING CASE

## I. PROCEDURAL HISTORY

John Trossen ("Trossen") began receiving Social Security disability benefits on December 26, 1989, due to injuries he suffered in a motorcycle accident where his leg required amputation below the knee. On June 23, 1999, the Social Security SSA ("SSA") informed Trossen that it determined that he was no longer disabled, (Tr. 231), and informed him that his benefits would end as of September 1999, (Tr. 232). Trossen appealed, and Administrative Law Judge ("ALJ") Patrick D. Halligan determined that Trossen remained disabled. (Tr. 79.)

In January of 2003, Trossen began earning a significant income as the owner of a bait store and fishing guide. (Tr. 395-96.) Because of this substantial work activity, on April 20, 2005, the SSA informed Trossen that it appeared that he was no longer entitled to benefits as of April 2003, and it gave Trossen the opportunity to present information before it made a final determination. (Tr. 377.) Trossen' benefits were stopped in May of 2005. Because the SSA did not stop Trossen's

benefits until May 2005 but Trossen had begun earning significant income in January of 2003, it determined that it had overpaid Trossen $25,806.60. (Tr. 400.)

Proceeding pro se, Trossen asked that this obligation to repay the overpayment be waived. (Tr. 403-11.) Trossen's request for a waiver was denied, (Tr. 413-19), and Trossen requested a hearing before an ALJ, (Tr. 420-22). Trossen appeared pro se at a hearing before ALJ Arthur Schneider on May 28, 2008. (Tr. 493-521.) ALJ Schneider denied the request for waiver, concluding that Trossen was not without fault in causing or accepting the overpayment. (Tr. 52-54.)

Trossen initiated a pro se appeal to the Appeals Council, but during the appeal, Trossen retained counsel. After some confusion about whether the record of the proceedings before the ALJ had been lost, (Tr. 30-36), on November 27, 2009, the Appeals Council ultimately denied Trossen's request for review, (Tr. 23-25). After numerous requests for extensions of time, (Tr. 6-7), proceeding with the assistance of counsel, Trossen filed the present action on May 3, 2010.

Upon all parties consenting to the full jurisdiction of magistrate judge, (Docket Nos. 4, 6), this matter was reassigned to this court for all further proceedings, (Docket No. 7). Trossen has submitted his initial brief, (Docket No. 10), to which the defendant has responded, (Docket No. 13), and Trossen has replied, (Docket No. 16). The pleadings in this matter are closed and the matter is ready for resolution.

**II. ANALYSIS**

Trossen does not disagree with the conclusion that he is no longer disabled or that he was overpaid benefits. Rather, the only dispute is whether the Commissioner erred in determining that Trossen is not eligible for a waiver of the obligation to repay this overpayment.

If the Social Security SSA overpays disability benefits to an individual, the overpaid individual must generally return the overpayment. However, overpaid individuals may be able to obtain a waiver of this repayment obligation under certain circumstances. First, the individual must

demonstrate that he was not at fault for the overpayment. 42 U.S.C. § 404(b); Banuelos v. Apfel, 165 F.3d 1166, 1169-70 (7th Cir. 1999). Second, the individual must demonstrate that requiring him to repay the overpayment would defeat the purposes of the Act or be against equity and good conscience. 42 U.S.C. § 404(b); Banuelos, 165 F.3d at 1169-70. In the present case, ALJ Schneider found that Trossen was not without fault for the overpayment, and therefore the waiver was denied without ALJ Schneider addressing the second element of the waiver analysis. (Tr. 54.)

> The Commissioner's decision denying a request for a waiver of recovery must be affirmed if it is supported by substantial evidence. 42 U.S.C. § 405(g). See also Banuelos v. Apfel, 165 F.3d 1166, 1169 (7th Cir. 1999), overruled on other grounds by Johnson v. Apfel, 189 F.3d 561, 562 (7th Cir. 1999). Evidence is considered substantial if a reasonable person would accept it as adequate to support the Commissioner's conclusion. Young v. Barnhart, 362 F.3d 995, 1001 (7th Cir. 2004). A reviewing court may not "reevaluate the facts, reweigh the evidence, or substitute [its] own judgment for that of the ." Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995).

Bosnich v. Barnhart, 2006 U.S. Dist. LEXIS 55216 (N.D. Ill. 2006).

In challenging the decision of the Commissioner, Trossen contends that ALJ Schneider failed in his obligation to properly advise Trossen about the availability of counsel, and upon failing to properly advise Trossen, ALJ Schneider failed to properly develop the record. As for the merits, Trossen contends that administrative finality precludes the retroactive finding of overpayment and that the conclusion that he was not at fault for the overpayment is not supported by substantial evidence.

**A. Administrative Finality**

At the time of ALJ Halligan's decision in August of 2000 finding that Trossen remained disabled, the prospect of Trossen opening his own business was on the horizon. (Tr. 77-80.) Trossen's efforts to get his business running were discussed at length at the hearing and ALJ Halligan was clearly concerned about how terminating Trossen's benefits as he was trying to get this new business off the ground might derail Trossen's plans. (See Tr. 480-88.) Trossen spoke

3

extensively of his desire to get off of Social Security and become financially independent as the owner of his own business. (Tr. 480.) Notably, Trossen stated, "And I promise, as soon as I'm making money I will let you know and I won't need this anymore." (Tr. 480.)

The rules of administrative finality generally preclude the SSA from re-opening a disability determination more than four years later. SSR 82-66. Trossen contends that ALJ Schneider necessarily reopened the 2000 determination by ALJ Halligan when ALJ Schneider found that Trossen completed a trial work period between September 1999 and May 2000. (Docket No. 10 at 6.)

The Commissioner responds that ALJ Schneider's determination did not require reopening ALJ Halligan's prior determination. (Docket No. 13 at 6.) ALJ Halligan determined only that Trossen had not engaged in substantial gainful activity ("SGA") since May 14, 1998 and thus remained disabled. (Docket No. 13 at 6.) ALJ Schneider's determination that Trossen commenced a trial work period prior to ALJ Halligan's decision is not inconsistent with ALJ's Halligan's finding that Trossen did not engage in SGA because there are numerous ways an individual might have commenced a trial work period without engaging in SGA. (Docket No. 13 at 6-7.)

Under the regulations in effect at the time of ALJ Halligan's determination in 2000, a self-employed person engages in SGA if he spends more than 45 hours a month managing a business, 20 C.F.R. § 404.1575(b)(1), and receives more than $700.00 a month in income from the business, 20 C.F.R. § 404.1574(b)(2). An individual need not engage in SGA to be considered in a trial work period. 20 C.F.R. § 404.1592(b). A trial work period will commence under the 2000 regulations when a self-employed individual earns more than $200.00 a month or works more than 40 hours a month. 20 C.F.R. § 404.1592(b). An individual has only one trial work period of 9 months, regardless of whether the 9 months are consecutive, during a period of entitlement to cash benefits. 20 C.F.R. § 404.1592(c). Thus, under the 2000 regulations, if a person earns more than $200.00 but

4

not more than $700.00 a month, the disabled individual will be in a trial work period but not be engaged in SGA.

The issue before ALJ Halligan was not whether Trossen had begun a trial work period. The issue for ALJ Halligan was whether Trossen had engaged in SGA. As noted above, a finding that Trossen had not engaged in SGA does not necessarily mean that Trossen did not begin a trial work period. The court is presented with no reason to conclude that the rules of administrative finality forever bar the Commissioner from considering facts simply because they happened before a prior administrative decision. Rather, the rules of administrative finality merely limit the Commissioner's ability to upset determinations necessarily made in a prior decision. The bar is upon *re*-considering facts, not considering facts for the first time. Thus, ALJ Schneider could not later determine that Trossen had, in fact, engaged in SGA prior to ALJ Halligan's decision. That determination was foreclosed by ALJ Halligan's decision. However, ALJ Halligan made absolutely no determination as to whether Trossen began a trial work period prior to his decision, and because ALJ Halligan did not make this determination, SSR 82-66 did not bar ALJ Schneider from subsequently so finding.

**B. Fault**

An individual is at fault for the overpayment if the overpayment resulted from:

(a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or

(b) Failure to furnish information which he knew or should have known to be material; or

(c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

20 C.F.R. § 404.507.

Trossen argues he was not at fault for the overpayment because he truthfully provided all information that the SSA requested and reasonably relied upon notices from the SSA and statements

5

by ALJ Halligan that led Trossen to believe that when Trossen was suspected to no longer be eligible for benefits, the would initiate a review.

In 2000, ALJ Halligan was clearly looking for a way to continue Trossen's benefits, at least temporarily. ALJ Halligan discussed at length how even if he determined Trossen was no longer disabled, Trossen might be able to remain eligible for benefits under a special program because he was amidst a rehabilitation plan with the Department of Vocational Rehabilitation. (Tr. 481-91.) ALJ Halligan went so far as to advise Trossen about what he should do to be able to benefit from this program if ALJ Halligan found Trossen was not disabled and how Trossen's benefits could continue while the matter under review. (Tr. 481-91.) Ultimately, this discussion was inconsequential because ALJ Halligan found that despite Trossen's improvement, Trossen remained disabled.

At no point in the hearing, or in his decision, did ALJ Halligan make any sort of assurances that could be reasonably interpreted as explicitly excusing Trossen from his obligation to report to the SSA relevant changes in his employment. The only point where ALJ Halligan even remotely suggested that the SSA might be actively monitoring Trossen's case is when in his decision ALJ Halligan suggested that a review be conducted within 36 months because continued improvement was likely. (Tr. 80.) To this court, Trossen's claim that he understood ALJ Halligan's suggestion that a medical review should be conducted in the future to mean that he was "in the clear for a full three years or until his case was reviewed," (Docket No. 10 at 10), is less than credible. This might have been what Trossen honestly believed, (see Tr. 404, 469), but if so, in the view of this court, such a belief was not reasonable.

ALJ Halligan determined only that Trossen remained disabled through the date of the decision, (Tr. 79), and clearly believed that in the near-future Trossen would no longer be disabled. It is unclear why ALJ Halligan suggested a maximum 3-year timeframe in his decision; at the June

6

22, 2000 hearing, Trossen indicated that he hoped to be off of Social Security within 6-months, (Tr. 486). It is not clear if Trossen was using the 6-month timeframe as an estimate as to when his physical condition would permit him to work fulltime (the record is clear that despite ALJ Halligan's finding that Trossen remained disabled, Trossen had regularly been doing substantial highly physical work remodeling his business) or if he instead was estimating that in 6 months his new business would be off the ground and he would no longer need to rely on the disability income, which is obviously not the standard for determining eligibility for disability benefits.

The fact that Trossen received numerous notices about his benefits is not sufficient to establish that Trossen was without fault. See Kurtz v. Astrue, 2009 U.S. Dist. LEXIS 27371, *15-*16 (S.D. Tex. Mar. 31, 2009). As Trossen notes, all beneficiaries receive a regular notices from the SSA. As pointed out by the Commissioner, if the court were to accept Trossen's argument that receipt of such notices meant that a person was not at fault for an overpayment, essentially no recipient would be at fault for an overpayment such as this. Clearly, this is not the law.

It is also not enough that Trossen responded timely and honestly to all the SSA's requests for information. A beneficiary has an affirmative duty to disclose relevant information even if it is not explicitly requested. See Astrue, 2009 U.S. Dist. LEXIS 27371, *13-*15. This burden does not rise to the level of requiring a beneficiary to interpret the complex statutes and regulations governing disability benefits, id. at *15-*17, but conversely, an individual is not able to avoid fault by sticking his head in the sand.

Although it is clear that the SSA eventually found out about Trossen's income, and there is some indication that the SSA could have recognized that Trossen was no longer eligible for benefits earlier than it eventually did, (see Docket No. 13 at 12 fn. 7 ("Admittedly, it would have been better for SSA to have connected the dots and realized something may be amiss.")), Trossen makes no claim that he ever explicitly informed the SSA of his new income. Granted, Trossen was not hiding

7

his income; he apparently honestly disclosed his income to the IRS and the SSA relied upon this information to, ironically, increase Trossen's benefits, (see Docket No. 13 at 12, fn 7 (citing Tr. 43)). But simply because the SSA could have done more to prevent this overpayment does not absolve Trossen of his obligation to repay the overpayment. Notwithstanding the SSA's failure of recognition, a waiver shall be granted only if the individual was not at fault for the overpayment. 20 C.F.R. § 404.507. Even if the SSA is predominantly to blame for the overpayment, the individual will be excused from repayment only if he was wholly innocent. Id.

Trossen also contends that ALJ Schneider's decision is not supported by substantial evidence because the record does not contain any evidence that he did not notify the SSA of his income. (Docket No. 10 at 8.) This argument is not persuasive. How an evidentiary record is supposed to contain proof that an event such as this did *not* occur escapes the court. Rather, the very absence of any indication or even claim that Trossen did appropriately notify the SSA of his income is the best evidence that Trossen never made such a notification.

Finally, Trossen contends that ALJ Schneider's decision was not supported by substantial evidence because ALJ Schneider's finding that Trossen was informed when he began receiving benefits that he had a duty to timely report income, (Tr. 53), was not supported by a reference to the record. Trossen contends "there is no proof that Trossen was ever informed about a need to inform Defendant of income or the standards of trial work periods in his initial notices, later notices, or by ALJ Halligan." Because the record is devoid of any notices Trossen received, Trossen contends that ALJ Schneider's decision is not supported by substantial evidence.

It is obviously preferred that an ALJ support each factual finding with an appropriate reference to the record. It certainly makes a reviewing court's job easier. However, failing to do so does not, in itself, form a basis for remand. ALJ Schneider was not making a credibility finding or a

finding about Trossen's medical limitations, in which case a reference to a specific portion of the record is often essential in order to build a logical bridge from the evidence to the conclusion.

The district court need not nit pick a decision and remand it for addition of a reference to the record. See Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires [this court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."). If the record contains readily-identifiable un-contradicted support for the factual finding, the lack of a reference is harmless error, if error at all. Unfortunately, a review of the record in this case requires more than simply picking nits.

The Commissioner contends that ALJ Schneider was referring to a pamphlet Trossen was provided when he was first found to be disabled. (Docket No. 13.) The record indicates that Trossen agreed on February 13, 1989 "to notify of all events as explained in the rights and responsibilities pamphlet given to [him]," and that he received "a printed explanation of [his] reporting responsibilities." (Tr. 82.) A separate letter dated January 29, 1990 states that Trossen was provided a pamphlet entitled "Your Social Security Rights and Responsibilities – Disability Benefits," which informed Trossen of "what must be reported and how to report." (Tr. 217.) Trossen was instructed to "be sure to read the parts of the pamphlet which explain what to do if you go to work or if your health improves." (Tr. 217.)

The information in the record merely confirms that Trossen was informed of certain obligations. Although the court could speculate that the documents mentioned in the record refer to documents wherein Trossen was informed that he was obligated to report the events that occurred in this case, proceeding in such a manner paints with too broad a brush. This court and the ALJ are bound by what the record actually says and cannot simply gloss over and speculate as to what might be within a referenced document. The record lacks sufficient evidence to permit the conclusion that

Trossen was explicitly informed of his obligation to disclose that he had returned to work and was earning significant income. Therefore, ALJ Schneider's finding that Trossen was so informed, is not supported by substantial evidence.

In summary, an individual is at fault for an overpayment if he fails "to furnish information which he knew or should have known to be material." 20 C.F.R. § 404.507(b). ALJ Schneider, in effect, found that Trossen failed to furnish information that he knew was material because he had been explicitly informed of his obligation to disclose the information. But as noted above, this finding is not supported by substantial evidence.

Perhaps ALJ Schneider could have found that other evidence in the record, such as Trossen's promise to inform the SSA once he started making money, (Tr. 480), demonstrated that he knew of his obligation to disclose his income. Alternatively, ALJ Schneider might have been able to conclude that the evidence demonstrated that Trossen should have known that the fact he was earning significant income was material information that he should have disclosed. But in his terse opinion, ALJ Schneider did not discuss these alternative possibilities. The court is constrained to what ALJ Schneider did say and cannot consider what could have been said; it is not permissible for this court to re-evaluate the evidence and re-write ALJ Schneider's decision in an effort to sustain his determination. Therefore, remand is necessary.

On remand, the ALJ must consider factors such as the Trossen's age and intelligence and any physical, mental, educational, or linguistic limitations and determine whether the overpayment resulted from any of the circumstances outlined in 20 C.F.R. § 404.507.

**C. Waiver of Right to Counsel**

When Trossen appeared pro se at the hearing before ALJ Schneider on May 28, 2008, ALJ Schneider asked him a series of questions about whether he wished to proceed without counsel. (Tr. 495-500.) After Trossen asked a number of questions about whether he could appeal if ALJ

Schneider's decision was unfavorable and if ALJ Schneider represented the SSA, Trossen agreed to proceed without counsel. ALJ Schneider gave Trossen a form entitled "Waiver of Right to Representation," which Trossen then signed. (Tr. 468.)

The Seventh Circuit Court of Appeals has been very clear as to what is necessary before an individual may waive his statutory right to be represented by counsel at a hearing before an ALJ.

> To ensure valid waivers, ALJs must explain to pro se claimants "(1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees."

Skinner v. Astrue, 478 F.3d 836, 841 (7th Cir. 2007) (quoting Binion v. Shalala, 13 F.3d 243, 245 (7th Cir. 1994); Thompson v. Sullivan, 933 F.2d 581, 584 (7th Cir. 1991)). It is frankly amazing to this court, given how long this has been the law in the Seventh Circuit and how frequently it comes to this court's attention, that ALJs have failed to fully comply with the Seventh Circuit's requirements. At the very least, the Commissioner should have issued a standard script for ALJs in this circuit to recite at the beginning of hearings of unrepresented individuals and standard forms wherein all these rights are explicitly articulated, a sort of Miranda warning for persons appearing pro se before ALJs in Social Security proceedings. Too often, ALJs such as ALJ Schneider, seem content to engage in meandering and vague discussions about an individual's right to counsel, (see Tr. 496-97), and utilize pre-printed forms that lack many of the elements the Seventh Circuit has repeatedly said are required, (see Tr. 468). Consequently, the result is that certain elements required by the Seventh Circuit are missed. That is what happened here.

Trossen contends that ALJ Schneider failed to advise Trossen of the third element set forth above. Trossen acknowledges that because this was an overpayment case, the omission of any discussion about fees being capped to 25% of past due benefits was harmless because there were no past due benefits. (Docket No. 10 at 2-3.) However, any fees still would have to be approved by the court and Trossen was not informed of this. (Docket No. 10 at 3.) The closest ALJ Schneider came

11

to articulating this limitation is when he stated, "there's [sic] limits set up by Social Security as to how much that can be, so they can't just charge you any figure they want." (Tr. 496.) This is insufficient to comply with the Seventh Circuit's mandate. ALJ Schneider was required to state that any fees had to be approved by the court, and he failed to do so.

> The ALJ's failure to obtain a valid waiver of counsel heightens his duty to develop the record. Luna v. Shalala, 22 F.3d 687, 692 (7th Cir. 1994); Thompson, 933 F.2d at 585-86; Smith v. Sec. of Health, Educ. & Welfare, 587 F.2d 857, 860 (7th Cir. 1978). When an ALJ fails to adequately inform an unrepresented claimant of the right to counsel, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." Smith, 587 F.2d at 860 (citation omitted); Binion, 13 F.3d at 244 . . . . If the ALJ does not obtain a valid waiver of counsel, the burden is on the Commissioner to show the ALJ adequately developed the record. Binion, 13 F.3d at 245. While a claimant represented by counsel is presumed to have made his best case before the ALJ, no such presumption attaches to an unrepresented claimant. Sears v. Bowen, 840 F.2d 394, 402 (7th Cir. 1987).

Skinner v. Astrue, 478 F.3d 836, 841-42 (7th Cir. 2007).

More importantly, the Commissioner has failed to demonstrate that ALJ Schneider fulfilled his obligation by adequately developing the record. For example, there is no indication that the Commissioner ever obtained the record of the hearing before ALJ Halligan. Although this court finds nothing in ALJ Halligan's decision that amounted to an assurance that Trossen was "in the clear for a full three years or until his case was reviewed," (Docket No. 10 at 10), the events at that first hearing were relevant to the ultimate question of whether Trossen knew or should have known whether information about his new income needed to be disclosed. It is conceivable that a upon reviewing the record of the hearing before ALJ Halligan, an ALJ would conclude that, based on Trossen's lengthy discussion of his imminent plans for launching his business and ALJ Halligan's discussion about how under certain circumstances Trossen's benefits could continue even after he began earning substantial income, Trossen could have reasonably concluded that his income was not material information he needed to disclose. Of course, the opposite conclusion, that the transcript of the hearing before ALJ Halligan demonstrates that Trossen knew of his obligation to

disclose his income, is also a reasonable inference to be drawn. Deciding between these competing inferences is not a task for this court, but rather a determination that the ALJ will have to make upon remand.

**III. CONCLUSION**

ALJ Schneider failed to adequately inform Trossen about the nature of his right to counsel and thus Trossen's waiver of his right to counsel was ineffective. ALJ Schneider failed to adequately develop the record as required in such circumstances. Thus, remand is necessary. Further, remand is necessary because ALJ Schneider's conclusion that Trossen was informed of his obligation to inform the SSA of his income is not supported by substantial evidence. On remand, the ALJ must consider factors such as the Trossen's age and intelligence and any physical, mental, educational, or linguistic limitations and determine whether the overpayment resulted from any of the circumstances outlined in 20 C.F.R. § 404.507. If the ALJ determines that Trossen was not at fault for the overpayment, the ALJ must consider if Trossen has demonstrated that requiring him to repay the overpayment would defeat the purposes of the Act or be against equity and good conscience.

Finally, Trossen requests that, if the court orders remand, it recommends that the Commissioner, assign the matter to a different ALJ. While the court is not precluded from making such a recommendation, it is best to leave the decision as to the assignment of cases with the Commissioner. This court simply expects that on remand, Trossen now proceeding with the assistance of counsel, will have the record fully developed, regardless of the ALJ to whom the case is assigned.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **reversed** and this case is hereby **remanded** for further review in accordance with this decision. The Clerk of Court shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this <u>6th</u> day of December, 2010.

<u>s.AARON E. GOODSTEIN</u>
U.S. Magistrate Judge